**Salem**

DEBRA WILSON

v.

WILLIAM DARYL WILSON

No. 1978-90-3

Decided August 27, 1991

COUNSEL

Peter Curcio (G. Walter Bressler; Bressler, Curcio & Stout, on briefs), for appellant.

Daniel H. Caldwell (Randall A. Eads; Penn, Stuart, Eskridge & Jones, on brief), for appellee.

OPINION

**WILLIS, J.**—The appellant, Debra Wilson, contends (1) that the trial court failed to consider her son's best interests when it granted joint custody and the resumption of unsupervised visitation to his father, Daryl Wilson, the appellee; (2) that the trial court erred when it decreed that the primary custodial roles would be reversed automatically if the appellant moved again; and (3) that the trial court erred in holding Mr. Wilson's appeal of the juvenile and domestic relations district court's order timely. We affirm on issue (3), but reverse on issues (1) and (2).

The parties' son was born in 1981. When he was four years old, the parties separated, and they were divorced in 1985 in the Circuit Court of Washington County, Virginia. The divorce decree incorporated a separation agreement between the parties, whereby they were granted joint custody of their son, and Mrs. Wilson assumed the role of primary physical custodian. She became concerned about certain practices that occurred when the son visited

his father and paternal grandparents. At the age of seven, the son was regularly fed by his father with a baby bottle, took showers with his father, slept with his father, and his father would clean him after he had a bowel movement. Mr. Wilson admitted these practices. Mrs. Wilson took the son to Dr. Ramsden, a clinical psychologist, who reported this as child abuse. Mrs. Wilson and Dr. Ramsden made other allegations against Mr. Wilson, but he denied those accusations and the evidence concerning them was conflicting.

In January 1989, Mr. and Mrs. Wilson each petitioned the juvenile and domestic relations district court for sole custody of their son. That court ordered that all parties submit to psychological evaluation by Dr. Schact. Pending a further hearing, the court ordered both parents to abide by visitation provisions recommended by Dr. Schact. These specified that there be no overnight visits by the son with his father, that the son be in charge of his own body, that he feed himself without the use of baby bottles, and that he sleep in his own bed. The juvenile and domestic relations district court made these rules part of a temporary visitation order.

Dr. Schact filed a complete report on February 10, 1989. On March 7, 1989, after two days of hearing evidence, the juvenile and domestic relations district court denied both parties' requests for sole custody and continued the limitations on Mr. Wilson's visitation. These included the requirements that the appellee not feed the son with a baby bottle, that the son be in charge of his own body for bathing and cleaning purposes, and that the son sleep in his own bed. The court ordered a review in ninety days, stating that this was a temporary order as to visitation, but expressly providing in its order that the decision denying the parties' petitions for sole custody was final.

At the ninety day review hearing, June 2, 1989, the juvenile and domestic relations district court granted Mrs. Wilson's motion for leave to move the child's residence to Nashville, Tennessee. The court reestablished liberal visitation between the son and his father, but continued the injunction restraining Mr. Wilson from engaging in the practices which the court had earlier ordered stopped. Mr. Wilson appealed this order to the circuit court.

In May 1990, the juvenile and domestic relations district court held Mr. Wilson in contempt, finding that he had violated its March 7, 1989 order by continuing to engage in the practices concerning the son which he had been ordered to cease. The juvenile and domestic relations district court terminated Mr. Wilson's visitation and directed him to undergo counseling. He appealed the contempt finding to the circuit court and this appeal was consolidated with his appeal of the June 2, 1989 order.

On November 8, 1990, the circuit court entered the order to which this appeal is addressed. It continued joint custody in the parties, provided that Mr. Wilson should have liberal unsupervised visitation, but continued the injunction against his engaging in the prohibited practices. It also found that Mr. Wilson was in contempt of the juvenile and domestic relations district court's orders for continuing the enjoined practices, but deferred sentencing on this judgment. The trial court further authorized Mrs. Wilson's move with the son to Nashville, Tennessee, but ordered that should she move from that location, primary custody of the son would automatically transfer to Mr. Wilson.

■ Mrs. Wilson first contends that the trial court erred in granting joint custody and unsupervised visitation. On appeal, we consider the evidence in the light most favorable to the party prevailing below, and will reverse only if the decree is plainly wrong or is without evidence to support it. *See Simmons v. Simmons*, 1 Va. App. 358, 361, 339 S.E.2d 198, 199 (1986). We find that the trial court abused its discretion and we reverse.

■ In cases concerning custody and visitation, the best interests of the child are paramount. *M.E.D. v. J.P.M.*, 3 Va. App. 391, 396, 350 S.E.2d 215, 219 (1986). The trial court granted Mr. Wilson liberal unsupervised visitation while at the same time holding him in contempt for continuing the inappropriate and harmful bathing, cleaning and sleeping practices which the juvenile and domestic relations district court had enjoined. Granting liberal unsupervised visitation, while these practices have continued in contravention of a court order, was inconsistent with the child's best interests.

In its March 7, 1989 order the juvenile and domestic relations district court found that feeding the son at the age of seven with a baby bottle was harmful to his well-being both emotionally and

medically. The court also found that Mr. Wilson's cleaning the son after a bowel movement and bathing and sleeping with him had a negative physical and psychological impact on him. The juvenile and domestic relations district court enjoined Mr. Wilson from engaging in these practices, and in May 1990, found him in contempt for continuing to do so. These findings were made by the trial court in support of the injunction which it entered November 8, 1990. Yet, Mr. Wilson continued to take showers with the son, scrubbing all areas of his body. He continued to sleep with the son. He continued to clean the son after bowel movements.

To disregard the harmful effects these activities have on the son, to ignore the fact that his father has persisted in these activities in contravention of a court order, and to allow unsupervised visitation under those circumstances is an abuse of discretion. A grant of liberal unsupervised visitation rights is inconsistent with a contempt finding based on practices which continue to occur and which were the reason for visitation restrictions. Therefore, we reverse and remand this case for the establishment of visitation subject to appropriate safeguards.

Mrs. Wilson next contends that the trial court erred when it ordered that Mr. Wilson shall become the primary physical custodian of the son should she ever move from her current residence of Nashville, Tennessee. We agree and reverse.

A custody determination must be based on the child's best interests under the circumstances prevailing at the time of the decision. Virginia courts have jurisdiction to permit the removal of a child from Virginia to another state or to deny such removal. *Gray v. Gray*, 228 Va. 696, 698-99, 324 S.E.2d 677, 678 (1985); *Scinaldi v. Scinaldi*, 2 Va. App. 571, 573, 347 S.E.2d 149, 150 (1986); *Carpenter v. Carpenter*, 220 Va. 299, 302, 257 S.E.2d 845, 848 (1979).

A court may determine a particular custodial location to be a factor in awarding custody, if that location affects the child's best interests. Thus, a change of location may be a material change in circumstances, if the evidence at the time so indicates. However, a predetermined automatic reversal of primary custody, based on an undetermined move in the future, is clearly an abuse of discretion. A move from Nashville to another location at some time in the future may prove to be in the son's best interests.

However, this cannot be determined until the move is contemplated and all the circumstances associated with it are known. Therefore, we reverse the judgment of the trial court providing an automatic change of custody.

Finally, Mrs. Wilson contends that the trial court erred when it ruled that Mr. Wilson timely appealed the juvenile and domestic relations district court's order of March 7, 1989 which denied his petition for sole custody. She argues that the time for appealing the custody issue had passed. She is correct that the March order was appealable, but only as to the denial of sole custody.

The June 2, 1989 order establishing visitation was timely appealed by Mr. Wilson on June 6, 1989. The circuit court properly considered custody at that time. In determining visitation rights, a court must review the custodial situation. Code § 20-107.2(1).

Mrs. Wilson contends that evidence of circumstances prior to March 7, 1989 should have been excluded from the June 2 hearing in the juvenile and domestic relations district court and in the hearing in the trial court. She argues that in cases seeking a change in custody or visitation, only evidence of changes in circumstances since the most recent custody or visitation award may be received. The March 7, 1989 order did not establish a set of circumstances which served as a "cut off." It was a mere denial of a change of custody, not an establishment of custody. Therefore, the trial court was required to consider evidence relating to the order establishing joint custody and to all that transpired thereafter. The court properly considered evidence of circumstances which predated March 7, 1989. *See Turner v. Turner*, 3 Va. App. 31, 34, 348 S.E.2d 21, 22 (1986).

Accordingly, for the foregoing reasons, we reverse and remand in part and affirm in part.

*Reversed and remanded in part*;
*affirmed in part*.

Koontz, C.J., and Duff, J., concurred.