COURT OF APPEALS OF VIRGINIA

Present:  Judges Willis, Frank and Clements


JEAN E. ATTARD

MEMORANDUM OPINION*

v.    Record No. 2288-01-2                 PER CURIAM
                                          MARCH 12, 2002
ANTHONY J. ATTARD


FROM THE CIRCUIT COURT OF HENRICO COUNTY
George F. Tidey, Judge

(Deanna D. Cook; Bremner, Janus, Cook &
Marcus, on brief), for appellant.

(Carol A.N. Breit, on brief), for appellee.


Jean E. Attard (mother) appeals the decision of the trial court to grant Anthony J. Attard (father) future unsupervised visitation with their minor child.  Mother contends the circuit court abused its discretion in (1) granting husband future unsupervised visitation, (2) deferring decision making authority on the issue of unsupervised visits to Clinical Alternatives, and (3) placing husband in charge of monitoring his own counseling and reporting his minor child's difficulties.  Upon reviewing the record and briefs of the parties, we conclude that this appeal is without merit.  Accordingly, we summarily affirm the decision of the trial court.  See Rule 5A:27.

---

    * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

On appeal, we view the evidence in the light most favorable to the party prevailing below and grant to that party all inferences fairly deducible therefrom.  See McGuire v. McGuire, 10 Va. App. 248, 250, 391 S.E.2d 344, 346 (1990).  The parties married on December 6, 1986.  One child, Charles J. Attard (the child), was born of this marriage on November 18, 1994.  The parties separated in February 1999.

Mother was diagnosed with brain cancer during her pregnancy in August 1994.  She underwent brain surgery on December 19, 1994, one month after delivering the child.  During the course of this surgery, a tumor was removed from the right frontal parietal lobe of mother's brain.  Mother subsequently suffered a recurrence of symptoms for which she underwent additional chemotherapy in 1998.  She is presently taking the medications Dilantin and Phenobarbital to prevent seizures.

In January 1998, mother and father noted that the child's behavior toward father abruptly changed.  On at least five or six occasions, the child told father to die; go away.  On these occasions, the child resisted being alone with father.  The child also resisted father's attempts to change his diapers.  Mother testified that it was about this time she learned of husband's alleged sexually deviant behavior.

Concerned about the child's behavior, the parties consulted a child psychologist, Dr. Crichigno.  Father met once with

-

Dr. Crichigno and was questioned about his sexual behavior. Within two months of this meeting, father sought counseling to address mother's concerns about his sexual behavior. Father admitted suffering sexual abuse as a child.

In 1998, father accepted an extended work assignment in Japan; the child accompanied mother to New York where she received medical treatment. Upon arriving in Japan, father decided to abandon the assignment and return to Richmond. A month later, father traveled to New York to visit mother and the child. Both parties testified that father's access to the child was restricted and supervised by mother during this and subsequent visits.

In February 1999, mother returned with the child to Richmond, but she did not resume cohabitation with father. Before the issuance of an order allowing supervised visitation in late 2000, father visited the child "on a majority of the weekends" for periods of up to three and one-half hours. All such visits were supervised. By May or June of 1999, the child's behavior, according to mother, again started to decline. She initiated divorce proceedings on August 12, 1999.

That month, mother consulted Dr. Pamela Waaland regarding her perception that the child's behavior had declined. Dr. Waaland testified that during the initial meeting mother stated that the child was having trouble with sleep, very fearful, having nightmares, bizarre behavior, [and] having some aggression. At that meeting, mother expressed her concern about father's sexual

-

behavior and her suspicion that father was sexually abusing the child. Since August 1999, Dr. Waaland has conducted over thirty sessions with the child. She characterized the meetings as common. Dr. Waaland met with father once, in January 2000. At trial, Dr. Waaland diagnosed the child with adjustment reaction disorder and stated that she was unable to rule out a diagnosis of post-traumatic stress disorder. One possible explanation for the child's disorder, Waaland stated, was that he was sexually abused.

The trial court directed Dr. Evan Nelson to evaluate father to assess him for traits of sexual deviancy that might be relevant to his parenting abilities. For the evaluation, Dr. Nelson reviewed his interviews with father, documents submitted by mother, and the testimony of, among others, Dr. Waaland and mother. Dr. Nelson noted that mother's allegation of sexual abuse seemed to be the primary reason for requesting this evaluation and addressed the issue accordingly.

Dr. Nelson administered the Multiphastic Sexual Inventory - II (MSI-II) test and a portion of the ABEL Assessment of Sexual Interest (ABEL) test to father. His score on the MSI-II indicated some attitudes about sexuality that are problematic, but does not predict that he will molest in the future. On the ABEL test, father tested as sexually interested in preschool-aged boys. Nelson noted that only the ABEL results suggested father's interests were anything but normal. On the probative value of the ABEL results Dr. Nelson wrote that "[a] psychological test cannot

-

prove what [father] did in the past; and . . . a deviant result on the ABEL might not be meaningful for predicting the future."

Dr. Nelson did determine, based upon all of the information available, that father manifested a sexual disorder. He stated that father's behavior met criteria for the DSM-IV diagnosis of Paraphilia, NOS, an interest in sexual activity that is atypical and that may eclipse normal sexual functioning. However, Dr. Nelson opined that this sexual disorder was not related to the child. Accordingly, he "found no clear and convincing evidence that [father's] psychological problems would affect his behavior with [the child]."

By order dated January 30, 2001, the trial court permitted father supervised visitation with the child for eight hours every other weekend. Pamela Taylor, a social worker with Clinical Alternatives, supervised nine such visits. Each of the visits went well. She testified that father was cooperative and complied with the rules set forth by Clinical Alternatives. As ordered by the trial court, Taylor maintained constant eye-to-eye contact with the child throughout the visits. Taylor testified that the visits, preplanned by mother, often consisted of educational outings: trips to science museums, the children's museum, and schoolhouses. She noted that father takes the "time to talk with [the child] regarding different activities, working on his school," and on a one to ten scale of a dad she rated father a ten, the very best. The child, initially timid or reserved in the

-

company of father, has grown more comfortable in father's presence.

Gerard Kilyk, another social worker with Clinical Alternatives, supervised four visits. He corroborated Taylor's account of the manner in which father and child collectively decided on an activity. Kilyk noted how they interacted, and recalled how the two "would have a dialogue that would be very lengthy" and that "[t]here would be lots of interaction about . . . play type things and just general life things." He, too, rated father's parenting skills a ten.

During the hearing on mother's motion to terminate or further limit father's supervised visits, father presented the testimony of Dr. Michael Martelli, a rehabilitation neuropsychologist. Dr. Martelli opined that damage to the brain would always produce a consequence. He reviewed mother's medical records and stated that the damage to a brain after an operation identical to that performed on mother might affect the patient's perception and ability to make decisions. Dr. Martelli explained that those who suffer brain damage similar to mother's commonly lack an awareness of their impairment. They also frequently misperceive the intentions and the motivations of others. In his experience, relationships change in almost every case after a brain injury. He estimated the divorce rate to be fifty percent in the year following brain injury.

-

By final decree of divorce dated August 8, 2001, the trial court awarded sole legal and physical custody of the child to mother. The trial court allowed father to continue supervised visitation as established by the January 30, 2001 order, and it also allowed father to begin unsupervised visitation on Father's Day (June 2002) "[a]s long as the supervisors at Clinical Alternatives report that" ongoing supervised visitation went well. Moreover, in case "the parties cannot agree on expanded visitation," the trial court included in the order a statement that it "will hear it." It is from that decree mother appeals.

## ANALYSIS

### ISSUE I: UNSUPERVISED VISITATION

Mother contends the trial court abused its discretion in granting father future unsupervised visitation and that, in so ruling, it failed to address the child's best interests. Specifically, mother relies on the evidence presented at trial regarding alleged abuse and the child's perceived distress in the presence of father to support her claim that the trial court abused its discretion in allowing visitation.

"In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990). "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Id.

-

at 328, 387 S.E.2d at 795 (citing Eichelberger v. Eichelberger, 2 Va. App. 409, 412, 345 S.E.2d 10, 12 (1986)).  "A trial court's determination of matters within its discretion is reversible on appeal only for an abuse of that discretion . . . and a trial court's decision will not be set aside unless plainly wrong or without evidence to support it."  Id. (citations omitted).

Evidence of the child's alleged abuse produced at trial consisted primarily of the testimony of mother and Dr. Waaland, the child's psychologist.  From an alleged statement by the child about a tickling game with father, mother inferred sexual abuse.  Hers was the only testimony to recount a direct statement by the child about father's alleged abusive behavior. After conducting over thirty sessions with the child, Dr. Waaland was unable to recount a single direct statement by the child of any abusive incident.

Although Dr. Nelson found that father manifested an interest in sexual activity that was atypical, he did not believe that this sexual disorder was related to the child.  Dr. Nelson informed the trial court that he uncovered "no clear and convincing evidence that [father's] psychological problems would affect his behavior with [the child]."

A January 30, 2001 order permitted father supervised visitation for eight hours every other weekend.  The trial court heard the testimony of two counselors assigned to supervise

-

father's visits.  Both counselors praised father and expressed unequivocal confidence in his parenting skills.

For purposes of appellate review, "'[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'"  Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (citation omitted).  The record reveals that the trial court's decision to grant father unsupervised visitation was supported by the evidence and not plainly wrong.  Therefore, the trial court did not abuse its discretion.

Mother further asserts that the trial court wrongly considered her possible premature death in making the custody decision.  Her assertion is without merit.  Code § 20-124.3 provides that in determining a child's best interest, the court shall consider, among other factors, "[t]he age and physical and mental condition of each parent" and "[t]he role each parent has played and will play in the future." (Emphasis added).  Mother's brain condition has been and continues to be an issue in mother's life and, thus, a factor for the trial court to consider in determining the child's best interests pursuant to the statute.

Moreover, Wilson v. Wilson, 12 Va. App. 1251, 408 S.E.2d 576 (1991), cited by appellant in support of her argument, is distinguishable from the facts here.  In Wilson, the mother

-

sought to move to another state with the child and contested the award of visitation to father, after the father had violated a court order enjoining him from performing certain hygiene practices on the son. Id. at 1254, 408 S.E.2d at 578. The trial court continued joint custody, awarded father liberal visitation, found that the father was in contempt of the juvenile court injunction forbidding the questionable practices and authorized mother's move to Tennessee. The trial court also "ordered that should [mother] move from that location, primary custody of the son would automatically transfer to [father]." Id. We held that the trial court abused its discretion in awarding unsupervised visitation to father after he "persisted in these activities in contravention of a court order [namely, an injunction]." Id. at 1254, 408 S.E.2d at 578-79. We also held it was an abuse of discretion for the trial court to include in its order a "predetermined automatic reversal of primary custody [from mother to father], based on an undetermined move in the future." Id. at 1255, 408 S.E.2d at 579 (noting that child's best interests could not be assessed until a move is actually contemplated and/or accomplished).

Here, father did not violate any court orders or engage in questionable conduct in violation of a court order or injunction. Instead, the evidence showed that father complied with supervision requirements and conducted himself in an appropriate and exemplary manner. In contrast to the uncertain

-

event in Wilson, viz., a possible move by mother, this case established that mother underwent an operation for brain cancer and presently takes medications for seizures. Therefore, the trial court was required to consider the parents' physical condition and their respective roles in the future. See Code § 20-124.3. Moreover, the contested order provides for additional hearings in the event that the parties are unable to agree on expanded visitation in the future.

The record demonstrates that the trial court properly considered the factors contemplated by Code § 20-124.3 and determined that, under the present conditions, the best interests of the child were consistent with a grant of future, conditional unsupervised visitation. Accordingly, we find no abuse of discretion.

ISSUE II: DEFERENCE TO CLINICAL ALTERNATIVES

Mother asserts the trial court committed reversible error by delegating its authority to Clinical Alternatives to grant father unsupervised visits with the child.

"The trial court's decision, when based upon credibility determinations made during an ore tenus hearing, is owed great weight and will not be disturbed unless plainly wrong or without evidence to support it." Douglas v. Hammett, 28 Va. App. 517, 525, 507 S.E.2d 98, 102 (1998). Because we review the evidence in the light most favorable to the party prevailing below, all evidence in conflict with the father's evidence must be

-

disregarded.  See Garst v. Obenchain, 196 Va. 664, 668, 85 S.E.2d 207, 210 (1955); Rusty's Welding Service, Inc. v. Gibson, 29 Va. App. 119, 131, 510 S.E.2d 255, 261 (1999).

The trial court heard and considered the testimony of the parties and their witnesses, including the observations by two social workers at Clinical Alternatives regarding father's supervised visits with the child.  The record demonstrates that Clinical Alternatives and its staff performed in a professional and conscientious manner supervising and reporting on visits between father and child.  Mother presented no evidence that Clinical Alternatives was not competent or qualified.  Moreover, in its August 8, 2001 order, the trial court expressly reserved its authority to hear and determine any visitation issues "[i]f in the future the parties cannot agree on expanded visitation." Accordingly, we cannot say the decision to delegate some authority to Clinical Alternatives to oversee and/or assess present visitation and recommend future visitation was plainly wrong or without evidence to support it.

ISSUE III:  ALLOWING FATHER TO REPORT AND MONITOR

Mother contends the trial court erred by allowing father to monitor his own counseling and by ordering father to report any behavior problems by the child to wife or others.

"Rule 5A:18 requires that objections to a trial court's action or ruling be made with specificity in order to preserve an issue for appeal." Collado v. Commonwealth, 33 Va. App. 356,

-

367, 533 S.E.2d 625, 631 (2000).  The purpose of Rule 5A:18 is to ensure that the trial court and opposing party are given the opportunity to intelligently address, examine, and resolve issues in the trial court, thus avoiding unnecessary appeals and reversals.  Kaufman v. Kaufman, 12 Va. App. 1200, 1204, 409 S.E.2d 1, 3-4 (1991); Lee v. Lee, 12 Va. App. 512, 514, 404 S.E.2d 736, 737 (1991) (en banc).

Wife claims she preserved Issue III in her objections to the final decree of divorce.  A review of this document fails to show she preserved that issue.  Although mother objected to "Dr. Nelson's involvement in the duty to report unusual behaviors," mother failed to object to father's role of notifying "the mother, [father's] attorney or Dr. Nelson." Because wife failed to indicate where and if she preserved this issue, Rule 5A:18 precludes appellate review.  Moreover, due to the thorough and intense amount of supervision and oversight by the trial court and Clinical Alternatives in working with the parties, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

Accordingly, we summarily affirm the decision of the trial court.  See Rule 5A:27.

Affirmed.

-