COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Clements and Senior Judge Annunziata

GALEET BENZION WESTREICH

                                                              MEMORANDUM OPINION[*]
v.        Record No. 1136-08-4                                    PER CURIAM
                                                              OCTOBER 14, 2008
JONATHAN D. WESTREICH


                  FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                              Gaylord L. Finch, Jr., Judge

              (Alanna C.E. Williams; The Duff Law Firm, on brief), for
              appellant.[1]

              (Richard F. Gibbons, Jr.; Richard F. Gibbons, Jr., PLC, on brief), for
              appellee.


         Galeet BenZion Westreich (mother) appeals an order of the trial court granting primary

physical custody of the minor children to Jonathan D. Westreich (father) and visitation to mother.

On appeal, mother argues that the trial court erred by (1) failing to state how much weight it gave to

each of the factors in Code § 20-124.3; (2) failing to consider mother's role as primary caregiver

prior to the separation; (3) considering mother's potential move to Maryland; (4) considering

mother's allegations to Child Protective Services (CPS); (5) considering mother's relationship with

Jeffrey DeHart; (6) denying mother the right of first refusal to babysit the children; (7) awarding

primary physical custody of the children to father; (8) awarding father the right to make medical

decisions for the children; and (9) changing the visitation schedule for mother.  Upon reviewing the

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The court grants the joint motion for appellant's counsel to withdraw.  The Court's
records shall reflect that appellant is now proceeding without the assistance of counsel in this
matter and is representing herself on any further proceedings or appeal.

record and briefs of the parties, we summarily affirm the decision of the trial court. See Rule 5A:27.

BACKGROUND

Mother and father married on April 9, 1995. They have two minor children who were born of the marriage. Mother and father separated September 25, 2005, when mother moved out of the marital residence. After the separation, the parties reached a temporary visitation agreement of one day on and one day off. From March 2006 to September 2006, mother moved back into the marital residence, with the understanding that the parties were not resuming marital relations. After September 2006, mother moved out of the marital residence again. At that time, mother and father agreed to a week on/week off visitation schedule, with mother having every Tuesday and father having every Wednesday.

On April 16, 2007, father filed a complaint for divorce based on adultery and desertion. In his complaint, he requested sole legal and physical custody of the children. Mother filed an answer and cross-complaint, seeking a divorce based on living separate and apart for one year. Mother requested joint legal custody and primary physical custody of the children.

On January 25, 2008, mother called CPS to report that father inappropriately touched their children. The report was made only a few days after father had subpoenaed DeHart for a deposition. The report was unfounded. At father's request, the court released the identity of the reporter and found that the report was made in bad faith or with malicious intent. Mother later recanted her initial allegations to CPS.

On March 11-13, 2008, the trial court heard the custody and visitation matters. The parties agreed to joint legal custody of the children. The court ordered that father have primary physical custody and the "ultimate authority to make the final decision regarding medical and dental issues pertaining to the children in the event that the parties cannot agree." The court established a

- 2 -

detailed visitation schedule. The judge ruled from the bench that mother's visitation included every Tuesday with the children; however, the order stated that mother's visitation included every other Tuesday with the children. Mother timely noted her appeal.

ANALYSIS

"In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990).

"As long as evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal." Brown v. Brown, 30 Va. App. 532, 538, 518 S.E.2d 336, 338 (1999).

Factors in Code § 20-124.3

Mother argues that the court did not state how much weight it gave to each of the factors in Code § 20-124.3 in issuing its custody and visitation ruling.

A court "shall consider" the factors in Code § 20-124.3 to determine the "best interests of a child" for custody or visitation. Code § 20-124.3. However, a court "'is not required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.'" Sargent v. Sargent, 20 Va. App. 694, 702, 460 S.E.2d 596, 599 (1995) (quoting Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986)); see also Brown, 30 Va. App. at 538, 518 S.E.2d at 338.

The circuit court was not required to state how much weight it gave to each of the factors in Code § 20-124.3 when it determined custody and visitation. The court explained that it considered the factors and testimony from all of the witnesses. The court further discussed each parent's educational background and each parent's strengths and weaknesses. The court noted each parent's commitment to their religion and how they shared their faith with their children.

The court further explained that mother's instability and poor judgment calls were the primary reasons for the award of physical custody to father. The evidence showed that the court considered each of the factors.

## Mother's role

Mother argues that the court erred by not considering her role as primary caregiver for the children prior to the parties' separation.

The trial court stated that it considered all of the factors in Code § 20-124.3, which includes "[t]he role that each parent has played and will play in the future, in the upbringing and care for the child." Code § 20-124.3(5). There is no evidence to suggest that the court did not consider mother's role in the children's lives prior to the parties' separation.

## Mother's potential move to Maryland

Mother argues that the court erred in awarding primary physical custody to father because she might move to Maryland. Mother contends that there was no evidence that she was going to move to Maryland.

A court cannot determine custody based on an "undetermined move in the future." Wilson v. Wilson, 12 Va. App. 1251, 1255, 408 S.E.2d 576, 579 (1991). A material change of circumstances, including relocation, would be subject to a future review of the custody and visitation arrangements.

Although mother testified that she intended to stay in Virginia, the trial court found that "some of the mother's responses [were] hedging" and that she was "not really forthright in some of her answers."

The trial court stated, "I don't have a crystal ball, but I would think that the mother will probably get married and move to Maryland. That's where Mr. DeHart lives." Furthermore, the trial court stated, "I think there is uncertainty as to where the mother is going to live."

The evidence showed that mother applied for a job in Maryland. She sent an email to her mother stating that she hoped to find a job in Maryland, so she could be close to two of her friends and "much closer to where there are many more art opportunities for both girls." One witness testified that mother told the witness that she wanted to live in Maryland because it had a "larger Jewish community."

In discussing mother's living situation, the trial court focused on the children's best interests and mother's stability. There was "uncertainty" about where mother was going to live, and a move to Maryland would affect the children's lives. Despite mother's denial of a move to Maryland, the evidence demonstrated that mother was exploring employment opportunities for herself and extra-curricular activities for the children in Maryland.

The court did not abuse its discretion in considering mother's stability, including her living situation, in determining custody.

<u>Mother's allegations to CPS</u>

Mother argues that the trial court erred by considering mother's allegations to CPS in determining that father should have primary physical custody of the children.

In January 2008, after DeHart was served with a subpoena for a deposition by father, mother contacted CPS and expressed concern about inappropriate games that father allegedly played with the children. In February 2008, CPS investigated the matter, interviewed the children, mother, and father, and determined that the matter was unfounded. In her deposition on February 28, 2008, mother denied that father had ever sexually abused their children. On February 29, 2008, father filed a petition with the circuit court to determine the identity of the person who reported the alleged sexual abuse to CPS. On March 7, 2008, the circuit court found that the report was made with malicious intent and in bad faith, and allowed father to determine the identity of the reporter. At the custody hearing, mother denied making the report maliciously

or in bad faith. She stated that she was concerned about her children and wanted a professional to investigate the situation.

The trial court found that mother's actions "showed incredibly poor judgment" and that the investigation "had to be very unsettling for your girls." Mother's actions were "inappropriate." The court further stated that the CPS investigation "could have had a terrible impact on father's career" and "could cause a real ripple effect."

Mother contends that the trial court's focus was on the father, as opposed to the children's best interests. The evidence does not support this argument. The trial court's initial statements in its ruling focused on the children and how "unsettling" the investigation had to be for the children. The court's comments regarding the "ripple effect" of the investigation and the potential harm to father's career illustrated how the investigation could have impacted the children and their stability.

One of the factors that a court considers in child custody cases is "the propensity of each parent to actively support the child's contact and relationship with the other parent." Code § 20-124.3(6). The unfounded allegation made shortly before trial and mother's subsequent denial of the allegation reflected her inability to support the children's relationship with their father. Therefore, the court did not err in considering the CPS allegations in determining custody.

### Mother's relationship with Jeffrey DeHart

Mother argues that the court erred in concluding that mother's relationship with DeHart was confusing, and therefore harmful, to the children.

Mother testified that she and DeHart never resided together. He spent the night twice at her house and slept on the sofa. Mother, DeHart, and the children went to the park and visited friends together. DeHart attended events at the children's schools and extra-curricular activities.

Mother, DeHart, and the children celebrated religious holidays and Thanksgiving together. Mother and the children went to a birthday celebration with DeHart for one of his relatives. DeHart posted pictures of mother and the children on his website.

There also was evidence that the children referred to DeHart as "Daddy Jeff" and even called father "Jeff," instead of "Daddy."

"In all custody cases the controlling consideration is always the child's welfare and, in determining the best interest of the child, the court must decide by considering all the facts, including what effect a nonmarital relationship by a parent has on the child." Brown v. Brown, 218 Va. 196, 199, 237 S.E.2d 89, 91 (1977).

Father introduced two exhibits that the court discussed during its ruling. Both exhibits were written by mother and showed mother's confusion about her living situation and her relationships. The court emphasized that it did not want to get "into the specifics" of her relationship with DeHart because its only focus "is the impact on the kids." The court ruled that mother's relationship with DeHart "caused confusion" and that some of her actions were "ill-advised." Mother's instability was the focus for the court in determining its custody ruling. The court did not err in considering mother's relationship with DeHart.

### Mother's right to babysit

Mother argues that the court erred by not allowing her to have a first right of refusal to babysit the children.

Father employed a babysitter two afternoons per week for one hour each day. Twice a week, the babysitter picked up the children at 5:00 p.m. and watched them until father came home from work at 6:00 p.m. Mother's testimony was that when she picked up the children from school, she did not get home until 6:00 p.m. or 6:10 p.m. The trial court did not address mother's request to be allowed to babysit the children when father is not available.

The children's time with the babysitter is two hours per week. The court's primary concern was stability for the children. The trial court did not err in denying mother's request.

### Primary physical custody to father

Mother argues that the court erred in awarding primary physical custody of the children to father. She contends that father did not become involved in the children's lives until after the separation, and even since the separation, mother was the primary caregiver for the children.

The record contains numerous examples of each parent's involvement with the children. Both are active parents. Both attend school events, extra-curricular events, and religious events. Both are involved in the day-to-day raising of the children. The court commended the parents on raising two "very wonderful, intelligent" children.

After reviewing the factors in Code § 20-124.3, the trial court held that "the father is in a better position to ensure future cooperation and contact with the parents." The court further found that "the father – at least on a daily basis – does provide more stability and structure, less confusion." The court's decision was based on mother's apparent confusion and instability, including her employment situation and her relationship with DeHart. The court also discussed mother's poor choices, including the allegations made to CPS. We find no abuse of discretion; the court considered the various factors in Code § 20-124.3 in its ruling.

### Father's right to make medical decisions

Mother lists as one of her questions presented that the court erred in ruling that father has the final authority to make medical decisions for the children. She requested that the parties be awarded joint legal custody, including joint decisions regarding the children's medical needs. However, the issue of medical authority was not argued in her brief.

Rule 5A:20(e) requires the appellant's opening brief to contain "[t]he principles of law, the argument, and the authorities relating to each question presented." Mother did not comply

with Rule 5A:20(e) because her brief contains no argument or authority regarding the court awarding father the right to make the medical decisions for the children. In Jay v. Commonwealth, 275 Va. 510, 520, 659 S.E.2d 311, 317 (2008), the Supreme Court announced that when a party's "failure to strictly adhere to the requirements of Rule 5A:20(e)" is significant, "the Court of Appeals may . . . treat a question presented as waived." In this case, we find mother's failure to comply with Rule 5A:20(e) is significant. Accordingly, this issue is waived.

Change in visitation schedule

Mother argues that the trial court erred in changing the visitation schedule from a weekday visit every week to one that was every other week.

Upon mother's request at the conclusion of the hearing, the trial court allowed mother to have an overnight weekday visitation with the children. The final custody order states that mother's overnight weekday visitation will be every other week. Mother also was awarded every other weekend from Friday after school until Monday morning, alternate holidays, alternate winter break, alternate spring break, her birthday, and Mother's Day. Mother and father also alternate summer break with a two week on/two week off schedule. The order also allows the parents to vary the visitation schedule by advance written agreement.

With visitation, the court's focus is on the children's best interests, and the court has discretion in awarding visitation. See Vissicchio v. Vissicchio, 27 Va. App. 240, 252, 498 S.E.2d 425, 431 (1998). The court did not abuse its discretion in fashioning the visitation schedule.

CONCLUSION

The trial court's rulings of custody and visitation are summarily affirmed. Rule 5A:27.

Affirmed.