COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges O'Brien, AtLee and Athey
Argued at Lexington, Virginia


KRISTY MARIE ARMSTRONG, N/K/A
 KRISTY MARIE ROADCAP

v.      Record No. 0227-19-3

ADAM CHRISTOPHER ARMSTRONG

MEMORANDUM OPINION[*] BY
JUDGE MARY GRACE O'BRIEN
NOVEMBER 12, 2019


FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Bruce D. Albertson, Judge

Derrick W. Whetzel (Stephanie Warnock; GravesWhetzel Law,
PLLC, on briefs), for appellant.

William C. Scott IV (Law Office of William C. Scott, IV, PLC, on
brief) for appellee.

W. Andrew Harding, Guardian *ad litem* for the infant child.[1]


Kristy Marie Roadcap ("mother") appeals a decision by the Rockingham County Circuit

Court granting Adam Christopher Armstrong ("father") a divorce on the grounds of cruelty and

awarding him primary physical custody of the parties' child.  The court also granted the parties joint

legal custody, established a visitation schedule for mother, and denied her request for attorney's

fees.

Mother assigns error to four of the court's rulings.  First, she challenges the award of

primary physical custody to father as unsupported by the record and findings of the court.  Second,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Pursuant to Rule 5A:19(d), the guardian *ad litem* filed a notice stating that, although he
agreed with mother on several issues, he did not think the court abused its discretion.  Therefore, he
"agree[d] with [f]ather's side that the trial court's decision should be affirmed."

she argues that her "limited schedule" of visitation is also unsupported by the record or findings of the court. Third, she contends the court erred in granting father a divorce on the grounds of cruelty. Finally, she argues that the court erroneously denied her request for attorney's fees. For the following reasons, we affirm.

BACKGROUND

The parties signed a premarital agreement on May 13, 2015, which included a provision that "[e]ach party waives and releases the other from any claims for attorneys' fees and costs associated with any separation or divorce between the parties." They married on May 16, 2015, and later had one child, A.A.,[2] born July 11, 2016.

The parties had a tumultuous marriage with several separations and reconciliations. During their separations after A.A.'s birth, the parties agreed to shared custody. On January 20, 2017, they separated permanently and executed a property settlement agreement, which included a provision incorporating the premarital agreement.

Father filed for divorce on October 10, 2017, on the grounds of cruelty by mother and requested sole legal and physical custody of A.A. On November 27, 2017, father obtained a protective order against mother in Rockingham County Juvenile and Domestic Relations District Court. Pursuant to Code § 16.1-279.1, the order prohibited mother from having any contact with either father or A.A. Mother appealed to circuit court. Following an evidentiary hearing, the court granted father a protective order until December 11, 2019, but modified the conditions to only prohibit mother from contacting father, not A.A.[3]

---

[2] We use initials, instead of the child's name, to protect her privacy.

[3] Father appealed the court's decision not to include A.A. in the protective order. This Court affirmed. Armstrong v. Roadcap, No. 0141-18-3 (Va. Ct. App. Oct. 30, 2018).

Mother and father initiated various criminal and civil proceedings against each other, including a child abuse claim brought by father against mother, which was dismissed. Mother filed criminal assault charges against father that she later recanted. Additionally, father obtained a warrant against mother for violating the protective order. That charge was dismissed as well.

At the protective order hearing, father testified about mother's physical violence toward him that caused him to request a protective order. He stated that mother punched him in September 2016, slapped and spit at him in July 2017, and punched him several times on August 22, 2017. He also testified that mother repeatedly threatened to kill him. Father presented evidence of text messages from mother which the court described as "vindictive and aggressive." Father referred to the incidents of physical violence and verbal threats in his complaint for divorce, and by agreement, the court incorporated the transcript and evidence from the protective order hearing in the divorce and custody case.

Following various *pendente lite* hearings, on August 24, 2018, the court heard the issues of the grounds for divorce, custody, and visitation. At trial, both parties presented expert evidence from psychologists. Father's expert, a clinical and pediatric psychologist, evaluated the "attachment-caregiving" relationship between father and A.A. He opined that A.A. has a healthy attachment to father. He did not observe mother's caregiving abilities or assess A.A.'s attachment to mother but opined that "generally" he would not recommend "overnights for a child with a noncustodial parent . . . until the child is somewhere between the age of 3 and 4 years old."

Mother's expert, a clinical psychologist, evaluated her "cognitive and emotional functioning . . . to clarify [her] psychological status and capabilities relative to functioning in a parenting role." He concluded that "there do not appear to be any psychological or behavioral contraindications to her functioning as [the] primary custodial parent for her daughter. To the contrary, she appears

quite ideally suited for functioning in such a role." He noted that at the time of trial, mother was receiving individual counseling and psychotherapy, and he recommended she continue.

After trial, the court issued a written opinion granting father a divorce on the grounds of cruelty and making custody and visitation determinations. In ruling that father proved cruelty, the court stated that "[t]he grounds of divorce outlined in the [c]omplaint were sufficiently established and corroborated." It found that "[t]he last date of cruel behavior" was "[mother's] physical assault of [father] in August 2017." The court also noted that mother "made no objections to the sufficiency of this evidence" proving cruelty. Consistent with the written opinion, the divorce decree stated that "[mother] is guilty of cruelty toward [father], the last act occurring in August 2017."

In determining custody and visitation, the court in its written opinion reviewed the factors enumerated in Code § 20-124.3. It found that both parents enjoyed a close relationship with A.A., and although the parent-child bond was equally strong for father and mother, each parent had deficits. The court had concerns that mother was "highly erratic" and verbally and physically abusive toward father. The court found that father "offers a more stable living situation than [mother]" and "provided certainty and stability to the child during the parties' separation." However, the court described father as "calculating" and found that he "pushes [mother's] buttons, then decries her erratic response." It determined that father "has clearly cut [mother] out of his life" and is "attempting to strategically take [her] out of [A.A.'s] life as well." The court concluded, however, that mother's erratic and abusive behavior toward father was "so extreme that the stability [father] provides outweighs his negatives." Accordingly, the court granted father primary physical custody.

The court granted mother visitation every other Friday after daycare until Sunday at 5:00 p.m., every remaining Sunday from 1:00 p.m. to 5:00 p.m., and every Wednesday from 4:30 p.m. to 7:00 p.m. The court ordered that the parties alternate holidays with A.A.[4]

The court awarded the parties joint legal custody. In reaching this decision, the court recognized that "[n]either parent saw problems in the other's parenting until the most recent split" and "[b]oth parents have the capacity to be actively engaged with raising [A.A.] in the future." Although the court determined that "[b]oth parents are unable to cooperate in resolving disputes," it also noted that their "red-hot hatred has cooled to a slightly lower-grade, weary hatred" and expressed hope that they may be able to "move on."

The court awarded joint legal custody despite father's protective order against mother, finding that father "uses the protective order as part of an offensive stratagem. It has become a sword in the custody matter instead of a shield." The court directed the parties to communicate concerning the child "SUBJECT TO THE PROTECTIVE ORDER" with "[n]o telephone calls, except in emergency situations, or by written agreement." Consistent with the written opinion, the divorce decree provided that all communication between the parties was subject to the protective order and also required third-party custodial exchanges of A.A.

In a subsequent hearing on father's motion to reconsider joint legal custody, among other issues, and mother's motion for attorney's fees, the court denied both motions. The court denied mother's motion for attorney's fees on two alternative bases: first, because the premarital agreement precluded either side from recovering attorney's fees; and second, because the totality of the circumstances did not warrant an award of attorney's fees.

This appeal followed.

_____

[4] By agreement, the final order changed Wednesday's visitation to Tuesday with expanded hours of 2:00 p.m. until 7:00 p.m. "Friday after daycare" was changed to Friday at 3:00 p.m.

DISCUSSION

A. Custody and Visitation

Mother contends that the court erred by awarding father primary physical custody and granting her a "limited schedule" of visitation. We review a court's decision regarding child custody and visitation for an abuse of discretion. Albert v. Albert, 38 Va. App. 284, 294 (2002). Under this standard, the Court views the evidence in the light most favorable to the prevailing party and does not "retry the facts or substitute [its] view of the facts for [that] of the trial court." Congdon v. Congdon, 40 Va. App. 255, 266 (2003) (quoting Calvin v. Calvin, 31 Va. App. 181, 183 (1999)). If "evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal." Brown v. Brown, 30 Va. App. 532, 538 (1999).

"Unless statutorily directed otherwise by the General Assembly, in matters involving child custody, visitation, and related childcare issues, the court's paramount concern is always the best interests of the child." Rubino v. Rubino, 64 Va. App. 256, 261 (2015). A trial court "shall consider" all the statutory factors in determining the "best interests of a child" for custody and visitation. Code § 20-124.3. See also Code § 20-124.2(B). Failure to consider all the factors set out in Code § 20-124.3 is reversible error. Piatt v. Piatt, 27 Va. App. 426, 434 (1998). However, the court "is not 'required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.'" Vissicchio v. Vissicchio, 27 Va. App. 240, 246 (1998) (quoting Sargent v. Sargent, 20 Va. App. 694, 702 (1995)). See also O'Rourke v. Vuturo, 49 Va. App. 139, 150-51 (2006). "Where the record contains credible evidence in support of the findings made by [the] court, we may not retry the facts or substitute our view of the facts for [that] of the trial court." Bedell v. Price, 70 Va. App. 497, 504 (2019) (quoting Ferguson v. Stafford Cty. Dep't of Soc. Servs., 14 Va. App. 333, 336 (1992)).

- 6 -

Mother contends that in making the custody decision, the court abused its discretion by focusing on her negative attributes, while overlooking father's faults. She also asserts that the court put undue emphasis on father's economic stability. However, the record and the court's written opinion belie mother's assertions.

In the written opinion, the court addressed each of the factors contained in Code § 20-124.3 and made extensive factual findings that are supported by the record. The court did not solely criticize either mother or father for behaviors that were not in the child's best interest; it found them both at fault. Consideration of the parties' earning capacity and standard of living were not part of the court's analysis. Instead, the court focused more broadly on the "stable living situation" and the "certainty and stability" father afforded A.A. during the parties' separation. Ultimately, the court found that mother's erratic and abusive behavior was "so extreme" that father's ability to provide stability outweighed his negative attributes. Because evidence in the record supports these findings, we are precluded from reweighing the statutory factors or substituting our own judgment for that of the trial court. Therefore, we find that the court did not abuse its discretion in awarding father primary physical custody.

Mother also asserts that the court abused its discretion by failing to set a "much more liberal visitation schedule . . . to offset the negative influence of [father]." When a court determines "visitation of a non-custodial parent, as in custody issues, 'the best interests of the child are paramount.'" Vissicchio, 27 Va. App. at 252 (quoting Wilson v. Wilson, 12 Va. App. 1251, 1254 (1991)). "Determination of visitation rights is a matter of judicial discretion." Id. As with custody, "[t]he court must . . . consider all the factors outlined in Code § 20-124.3." Id. See Sargent, 20 Va. App. at 701.

Although mother contends that the court abused its discretion by not granting her more extensive visitation, she never proposed an alternative schedule or suggested a plan for additional

visitation. Mother explained that "[t]he rationale behind . . . not providing a [visitation] plan is that [her] main argument was to obtain primary physical custody of the minor child." The court specifically found that a "shared [physical] custody arrangement will not work to [A.A.]'s best interests" due to the parents' animosity. Although the court granted father primary physical custody, it provided a schedule for regular, ongoing, and occasionally overnight visitation with mother. We agree with the court's determination that this visitation schedule maintains stability for A.A. and counteracts father's proclivity to undermine the mother-child bond. Therefore, the court did not abuse its discretion in finding that this visitation schedule was in A.A.'s best interests.

## B. Grounds for Divorce

Mother argues the court erred in granting father a divorce on the grounds of cruelty pursuant to Code § 20-91(A)(6). She maintains that she "struck [father] only one time in August 2017" and this single act of physical abuse was insufficient to prove cruelty. However, mother never presented this argument at trial, and the court's written opinion expressly stated that "mother made no objections to the sufficiency of [the] evidence" proving cruelty. Additionally, mother did not file a motion to reconsider the grounds of divorce or challenge the sufficiency of the evidence in her written objection to the divorce decree. Because mother never gave the court an opportunity to rule on this issue, she has waived it on appeal. See Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."); see also Floyd v. Commonwealth, 219 Va. 575, 584 (1978) (holding that appellate courts will not consider arguments that differ from the specific argument presented to the trial court, even if it relates to the same general issue).[5]

---

[5] Mother is incorrect that the court based its decision on a "single act" of physical abuse occurring in August 2017. Instead, the court found the grounds of cruelty as "outlined in the [c]omplaint were sufficiently established and corroborated" and "[t]he *last date* of cruel behavior

Mother also contends that the court should have granted the divorce based on a one-year separation under Code § 20-91(9)(a) because those statutory grounds "were present [and] plainly before the court" and the cruelty grounds "reward[ed] the clearly abhorrent behavior of [father]." Mother presented this argument in her written objection to the divorce decree, but we find it unpersuasive.

"Where dual grounds for divorce exist, the trial judge is not required to grant a divorce under the one-year separation statute. [The court may exercise its] sound discretion to select the appropriate grounds upon which [to] grant the divorce." Zinkhan v. Zinkhan, 2 Va. App. 200, 210 (1986), superseded by statute on other grounds, Code § 20-107.1, as recognized in Wyatt v. Wyatt, 70 Va. App. 716, 720 n.1 (2019). See also Lassen v. Lassen, 8 Va. App. 502, 505 (1989) ("Where dual or multiple grounds for divorce exist, the trial judge can use . . . sound discretion to select the grounds upon which [to] grant the divorce."). Here, the court found father's allegations of cruelty were sufficiently established and corroborated, and mother never challenged the sufficiency of this evidence. Because the court was not required to grant a divorce on the parties' one-year separation where dual grounds exist, we find no error in the court's decision to grant father a divorce on the grounds of cruelty.

## C. Attorney's Fees

Mother contends that the court erred by denying her post-trial motion for attorney's fees. When the court denied her request, it determined that a fee award was both barred by the parties' written agreements and unwarranted under the totality of the circumstances. We agree.

---

was [mother's] physical assault of [father] in August 2017." (Emphasis added). Likewise, the divorce decree states that "[mother] is guilty of cruelty toward [father], *the last act occurring in August 2017*." (Emphasis added). Therefore, not only is mother's argument procedurally defaulted under Rule 5A:18, it also ignores the court's determination that there were multiple acts of cruelty warranting a divorce pursuant to Code § 20-91(A)(6).

The May 13, 2015 premarital agreement unequivocally addressed the issue of attorneys' fees. Paragraph 18 provided that "[e]ach party waives and releases the other from *any claims* for attorneys' fees and costs *associated with any separation or divorce* between the parties." (Emphasis added). The premarital agreement was incorporated into the separation agreement, and that agreement, apart from the custody provisions, was incorporated into the divorce decree without objection.

Mother argues that most of her attorney's fees were generated by the custody and visitation dispute, not the divorce. She argues that the parties did not anticipate having a child at the time they entered into the premarital agreement, and therefore, custody and visitation issues were not contemplated in the scope of the waiver.

Marital agreements "are contracts subject to the rules of construction applicable to contracts generally." Pysell v. Keck, 263 Va. 457, 460 (2002). Where the terms of the contract are unambiguous, courts must "adhere to the plain meaning of [the contract's] stated terms" and "'cannot read into [the contract] language which will add to or take away from the meaning of the words already contained therein.'" Southerland v. Estate of Southerland, 249 Va. 584, 588, 590 (1995) (quoting Wilson v. Holyfield, 227 Va. 184, 187 (1984)). "In reviewing the [marital] agreement, we must gather the intent of the parties and the meaning of the language . . . from an examination of the entire instrument, giving full effect to the words the parties actually used." Smith v. Smith, 15 Va. App. 371, 374 (1992) (quoting Layne v. Henderson, 232 Va. 332, 337-38 (1986)).

The parties signed the agreement before they were married, and they expressed their continued agreement twice after A.A. was born: first by incorporating it into their January 2017 separation agreement and second by not objecting to its incorporation into the divorce decree. The plain language of the premarital agreement reflects the parties' intent to create a broad waiver of

attorneys' fees in all matters "associated with any separation and divorce," and this Court cannot read into it an exception for "associated" claims involving custody or visitation. See Southerland, 249 Va. at 590.

The court also denied mother's request for attorney's fees based on the totality of the circumstances. In any divorce decree, in addition to provisions relating to child support or custody, the court may provide for the award of counsel fees. Code § 20-79(b). "Whether to award attorney's fees 'is a matter submitted to the sound discretion of the trial court and is reviewable on appeal only for an abuse of discretion.'" Kane v. Szymczak, 41 Va. App. 365, 375 (2003) (quoting Northcutt v. Northcutt, 39 Va. App. 192, 199-200 (2002)). Here, the court considered mother's gainful employment and ability to pay her own attorney's fees, which the court found were not unreasonable. Additionally, the court noted that mother did not prevail in many of the temporary and final rulings in this matter. Based on our review of the record, we find the court considered the relevant circumstances and did not abuse its discretion in denying mother's request for attorney's fees.

CONCLUSION

The court properly considered the factors of Code § 20-124.3 in awarding father primary physical custody and setting a visitation schedule for mother. Further, mother waived her challenge to the sufficiency of the evidence supporting the court's decision to grant father a divorce on the grounds of cruelty, and the court was not required to grant a divorce based on a one-year separation where dual grounds existed for the divorce. Finally, the court did not abuse its discretion in denying mother's request for attorney's fees based on the provision of the premarital agreement and the totality of the circumstances. For these reasons, the judgment of the court is affirmed.

Affirmed.