COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Humphreys and Russell
Argued at Leesburg, Virginia

PUBLISHED

JASON WYNNYCKY

OPINION BY
v.      Record No. 0207-19-4      JUDGE WESLEY G. RUSSELL, JR.
NOVEMBER 12, 2019
SUSAN T. KOZEL

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Daniel S. Fiore, II, Judge

Marc A. Astore (Marc A. Astore, P.C., on briefs), for appellant.

Lawrence D. Diehl (Barnes & Diehl, P.C., on brief), for appellee.


Jason Wynnycky ("father") appeals an order of the circuit court regarding custody and

visitation of the parties' minor daughter. He specifically challenges the court's decision to award a

period of 50-50 custody followed by Susan Kozel ("mother") being awarded primary physical

custody upon the child's entry into first grade. Finding no error, we affirm the judgment of the

circuit court.

BACKGROUND[1]

Father's appeal comes before this Court after a highly contentious and protracted course of

litigation in the circuit court. The circuit court took evidence on child custody and visitation issues

during numerous, hours-long hearings spanning almost three years. The evidence included

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are discussed in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

testimony from the parties, relatives, child-care providers, teachers, and mental health experts, numerous e-mails and photographs, and psychological evaluation reports. Because mother was the prevailing party below, we review the facts in the light most favorable to her, granting her all reasonable inferences that can be drawn from the evidence and disregarding any evidence that conflicts with her evidence. Geouge v. Traylor, 68 Va. App. 343, 347 (2017).

The parties were married on August 27, 2011; their daughter was born on September 11, 2013. On August 26, 2015, father filed for divorce after mother moved out of the marital home, taking the child with her. The circuit court conducted its first evidentiary hearing on November 23, 2015, to consider *pendente lite* custody and visitation arrangements.[2] The court ruled from the bench, noting father's anger toward mother and mother's control issues. To avoid troublesome transitions, the court endeavored to "set a schedule so that there is predictability."

The resulting *pendente lite* custody order, entered December 11, 2015,[3] directed that the parties share joint legal custody, that mother have physical custody, and that father have visitation every other weekend and every Wednesday evening. The order further established a detailed birthday and holiday visitation schedule; for the summer, the court awarded each parent two consecutive weeks in the months of June, July, and August, to be determined by the parties. An issue with the summer schedule arose in June 2016, when father moved for clarification of the order's provisions in light of a change in his business travel needs; the court resolved the issue by order after a hearing.

---

[2] Prior to the hearing, two consent orders allowing father some weekend visitation were entered.

[3] Entry of the order was delayed because the parties could not agree on memorializing language, so the court considered competing drafts and ultimately entered an order containing numerous handwritten modifications.

The parties' divorce proceedings continued. The extensive litigation involved substantial discovery and numerous filings, including objections to evidence, motions to quash, and other contentious pre-trial issues. After several continuances, an evidentiary hearing focusing on custody and visitation was held on November 22, 2016.

The witnesses at the hearing were profuse in their testimony as to the child's intelligence and good nature and her affection for both parents. The parties admitted to their problems with trust and communication. The evidence demonstrated that mother worked only part-time, affording her great flexibility in scheduling, while father normally worked daily from 8:00 a.m. to 5:00 p.m. and traveled extensively, often overseas, for his government employment. Although father recently had taken new employment to reduce his travel duties, he nonetheless reported three international trips over eleven months and anticipated quarterly trips, averaging seven to ten days each, going forward. Mother expressed concern about behavioral issues she was observing in the child after visits with father. She mentioned some arm biting and an episode of self-induced vomiting. Mother emphasized transitional issues and noted how father's vacation travel with their daughter failed to account for her age and rest needs in itinerary scheduling.

At the close of the hearing, the court took the matter under advisement pending receipt of mental health examinations of father and child and carried all the divorce issues over to a March 2, 2017 hearing for final resolution. An interim order entered December 9, 2016, directed that the December 11, 2015 *pendente lite* order remain in effect. When the anticipated reports were filed in February 2017, mother challenged the release, scope, and use of the child's report, necessitating a continuation of the custody issues from the March hearing date.[4]

---

[4] Equitable distribution and spousal support remained on the March docket, and those issues were partially resolved by order entered March 10, 2017. The custody issues initially were continued to April 6, 2017, but on that date the court addressed motions that had been filed, including one regarding the admission and use of an evaluation of the child at trial.

Trial proceeded on May 4 and 10, 2017, but the presentation of evidence was not concluded at the end of the May 10 hearing. As a result, the circuit court carried the matter over to June 9, 2017, for an additional two hours. Further argument was presented on June 22, 2017.

Much of the testimony from these hearings focused on a transition occurring the prior Thanksgiving weekend, when father dropped the child off with mother late and forgot to pack the child's favorite stuffed toy. Other relatives were present and arguments between the adults ensued in front of the child, and the child later did not want to participate in the activities mother had planned.

Evidence also was presented on father's lack of communication with mother regarding his work travel plans or event and vacation itineraries with the child; e-mail and text inquiries often went unanswered or were responded to several hours later, and details regarding logistics were not readily forthcoming. Mother also noted father regularly failed to communicate regarding potential health concerns, such as rashes or injuries. The evidence demonstrated an inability of the parties to negotiate and find consensus when unexpected issues arose.

Mother expressed concern over the child returning to her home bruised, disheveled, and with irregular sleep patterns. Mother consistently stressed that the child was experiencing sleep issues and was regularly overtired. Mother further suggested, based on her observations of the child's behavior, that the child was being exposed to negative comments regarding mother and mother's family.

Father's psychological evaluation disclosed effective parenting competence with respect to caring for his daughter, but that issues with lack of insight into the effects of his own behavior and stubbornness likely undermined his co-parenting abilities. The evaluation of the child revealed a child essentially developing on an age-appropriate basis, prone to emotional dysregulation upon stressors and tiredness, most often as a result of frequent transitions throughout a day or week. The

- 4 -

report also noted outbursts where the child had used words and phrases she likely had overheard her parents say.

The circuit court issued its ruling on custody and visitation in open court on July 20, 2017. The court first commented that the parties "have had a very difficult time in trying to co-parent this child" and that the "mutual resentment of each parent toward the other is really what drives their relationship and, therefore, shapes their relationship with [their daughter.]"  The court noted that it had "considered the factors under [Code § 20-124.3] in determining the best interest of the child . . . [and] weighed each of those factors."  The court then addressed each of the factors in turn, specifying certain findings.

The court stated, in part, that the "age, physical and mental condition of the child has been considered of course with the due consideration of the child's changing developmental needs. . . . There are no abnormal physical or mental conditions of the child, who . . . is equally loved by both parents."  The court found no evidence suggesting either parent possessed any physical or mental condition that would impact the child.

The court continued by saying that

> [b]oth parents . . ., appear to appropriately treat and care for the child and they're supportive . . . of her in their own way.  While there seems to be some disagreement as expected on some issues with how the other parent interacts with the child or cares for the child, as well as how to discipline the child.

The court further found that "both parents have a positive relationship with the child, although they express concerns about how the child acts with the other parent" and that "unfortunately [she] has had to experience and endure the personal conflict between her parents and their inability to reach agreement about parenting is more likely the cause for her restlessness and irritability at the time of transition."  The court also concluded that "[b]oth parents, going on to factor four, should be involved in the child's life with their equal involvement as is practicable[,]"

for "both parents have had a positive role in [their daughter's] upbringing but not to the level that she deserves."

"As to factor six," the court stated that each parent should "be more receptive as to how the child reacts to the other parent. From the mental health evaluation it appears that [the child's] behavior is sometimes over scrutinized by the mother. The child is perceptive and is probably aware of how under the microscope she can be seen and treated." The court completed its factor analysis by reporting that "[t]he parents have been willing to maintain a close relationship with [the child], . . . [b]ut the ability of each parent to cooperate with the other and resolve disputes is unclear."

The court then awarded joint legal custody and directed that the parents share physical custody on a weekly basis, greatly expanding father's time with his daughter when compared to his visitation rights under the *pendente lite* order. The court, however, limited the duration of this shared custodial arrangement, directing that upon the child's entry into first grade, "father's visitation shall be every other weekend beginning Friday from when school ends . . . until Monday morning . . . ." Noting the different demands between kindergarten and elementary school, the court stated: "[I]t's in the best interests of the child that she have this opportunity to be with her father on a weekly basis. And then once she starts first grade, I think it's more appropriate that it change to the alternating weekends." In discussing the court's order, the parties raised questions regarding certain aspects of the new arrangement, but father did not specifically challenge the court's authority to enter such a custody award.

The custody ruling was not memorialized until its incorporation into an order that was entered September 6, 2017, a few days shy of the child's fourth birthday. The order noted that the court was entering it "based on the findings of fact as stated on the record," after "having observed the demeanor and credibility of the parties and their witnesses" and "having reviewed Virginia

- 6 -

Code § 20-124.3 regarding custody and visitation factors." The circuit court specifically ordered that

> [u]ntil [the child] enters first (1st) grade, each parent will alternate physical custody of [her] on a weekly basis from Monday to Monday. . . . Th[is] schedule . . . shall continue until [the child] enters first (1st) grade, at which time father's visitation shall be every other weekend beginning Friday from school when school ends, or 5:00 PM if school is not in session, until Monday morning with the drop off at school before school begins, or if there is no school, then to [m]other's residence. . . . Father's first weekend shall begin the Friday following Labor Day weekend the year [the child] enters first grade.

In the ordinary course, the child was to begin first grade in the fall of 2019, roughly two years after entry of the order.

Although the order concluded the divorce and associated property issues, in a handwritten provision, it stated, "with respect to custody and visitation, this court's jurisdiction is reserved and a review hearing on those issues is hereby set on October 27, 2017 . . . to be heard by proffer. If . . . further evidence is required after said hearing, another date shall be set by the court to take evidence." Both parties noted their objection to the order; father indicated that he would file his specific objections within seven days, but the record does not contain such a filing.

A four-hour evidentiary hearing was scheduled for April 25, 2018, and then ultimately heard on June 21, 2018. Father stated that the hearing was "to review the provisions of the custody arrangement that the [c]ourt put forth in the September 6, 2017, order" and requested that the then-in-place shared custody arrangement be maintained with no change of physical custody upon the child's entry into first grade. Mother asked that the decreed future change in custody begin "now." Their daughter was to start first grade in September 2019.

The hearing revealed the parties' continued distrust and animosity towards one another. The parents had difficulty agreeing about a wide variety of things and had disputes over the terms of court orders, plans for the child's birthday party, and which car safety seat to use. Mother

- 7 -

complained of an inability to communicate with the child on father's time and father's lack of notice to her regarding events and potential health issues. Mother further expressed concern about negative comments about her and her family being made by father and his family in front of the child.

Considerable time was spent discussing a school event at which father showed hostility towards mother's family. Father's work travel, arranged to occur during mother's custodial time when possible, was highlighted again, as were the irregular hours the child was subject to when traveling with father. Mother testified to their daughter having an increased "clinginess" when the child returned to her home and to the child's continued fatigue, particularly on Monday and Tuesday, when she was unable to go to sleep at her ordinary bedtime, resulting in frequent and long naps.

At the close of the evidence, the court asked the parties to put in writing their requested relief. Mother requested immediate primary physical custody, or in the alternative, that the prior ruling regarding the change in custody once the child began first grade remain in place. Father asked that the week-on, week-off schedule continue indefinitely, arguing that the arrangement largely had demonstrated to be successful and that a change could prove detrimental. Father did not contend that the court could not order the prospective modification; rather he asked, "[i]f and only if, the [c]ourt determines that it would be in [the child's] best interest for one parent to have primary physical custody during the school year, . . . that he be awarded same."

The circuit court issued a written ruling on July 26, 2018, a little more than a year before the child's anticipated start of first grade. The court noted that its ruling was based on the child's best interests after applying the previously considered factors. The court denied the parties' respective "motion[s] for reconsideration as to the physical custody schedule effective during [their daughter's] [f]irst [g]rade" because "nothing has changed." Prior to entry of a memorializing order, however,

the court *sua sponte* issued a "Clarification Order" on August 30, 2018, whereby the court requested the parties, as they deemed appropriate, to submit written closing arguments for its consideration.

In his filing, father, for the first time, objected to the anticipated change in custody on legal grounds, specifically contending that the order's provision "is not a remedy supported by the case law of the Commonwealth of Virginia." Citing cases involving a potential future relocation of a parent, father argued that a "court cannot indulge in sheer speculation about what may be in the best interests of the child at some imprecise time in the future by providing for an automatic change in custody based upon a future event that may or may not occur."

"Having received and fully considered the written closing arguments," the circuit court issued a "Modification Memorandum Opinion" on October 24, 2018. The court maintained its previous rulings. The court explained its reasoning, writing:

> The [c]ourt is well aware of the typical increased demands on a young child entering elementary school. The parties did not offer evidence that [the child's] full-time school will be anything but typical. It will be in [her] best interest to be in [m]other's home during the school week, instead of the week-on and week-off current schedule. Based on the record and the [c]ourt's consideration of the nature, personality and character of the child as described by the parents and numerous witnesses, the [c]ourt finds that she will need the stability of one home location during the school year. The [c]ourt also finds that allowing [f]ather to have visitation with [his daughter] on all weekends would not be in the best interests of [the child], as it would deprive [her] of quality time with [m]other outside of the school week. Therefore, the [c]ourt finds that if [the child] enters first grade, the custody schedule will follow as previously ordered.

In rendering its decision, the circuit court further commented that it "finds the relationship between these parents is one of the most dysfunctional [it] ha[d] encountered[,]" and noted that

> [t]he parents appear to seek almost any issue to fight over. It could appear to a reasonable person that if one parent wants one thing, the other will oppose it simply because the other is making the request. If the parents applied one-tenth of their efforts opposing each other to finding common ground, this litigation could dissipate and [their daughter] could have a more normal life with these parents. However, presently, that does not seem possible.

- 9 -

After further disagreement between the parties as to drafting language, the circuit court finally memorialized its rulings when it entered its "Final Order for Custody and Visitation" on January 11, 2019, less than eight months prior to the start of the 2019 school year. The order specifically directed that the court's previous order of September 6, 2017, remain in force, adding however that "[i]f [the child] does not enter [f]irst [g]rade, the [week-on, week-off] custody schedule currently in place shall remain in effect, and the parties shall forthwith place the matter on the [c]ourt's docket to explain why she has not entered first grade."

Father appeals. He asserts that it was error for the circuit court to order in September 2017 that the "alternating weekly" custody arrangement that the court ordered at that time would "automatically change . . . when [the child] enters first grade, presumably [in] September of 2019[.]"[5] In support of his assertion, father argues that the circuit court could not order such a prospective change in custody and that, even if it could, such a change was not supported by the circuit court's own findings.

ANALYSIS

I. Standard of Review

"We begin our analysis by recognizing the well-established principle that all trial court rulings come to an appellate court with a presumption of correctness." Stiles v. Stiles, 48 Va. App. 449, 453 (2006) (quoting Riggins v. O'Brien, 263 Va. 444, 448 (2002)). "In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." Bedell v. Price, 70 Va. App. 497, 504 (2019) (quoting Farley v. Farley, 9 Va. App. 326, 327-28 (1990)). "The circuit court has 'broad discretion in making the decisions necessary to guard

---

[5] The child began first grade on September 3, 2019. During the pendency of this appeal, but prior to September 2019, father moved this Court to stay the provision of the circuit court's order that altered the custody arrangement when the child began first grade and further requested that we expedite oral argument in the matter so that a decision would issue by August 31, 2019. We denied the motion and heard the case in the normal course.

- 10 -

and to foster a child's best interests.'" Eaton v. Dep't of Soc. Servs., 66 Va. App. 317, 324 (2016) (quoting Farley, 9 Va. App. at 328). "A trial court's determination with regard to [custody and] visitation is reversible only upon a showing that the court abused its discretion." Bedell, 70 Va. App. at 504 (quoting Stadter v. Siperko, 52 Va. App. 81, 88 (2008)).

"An abuse of discretion occurs only when reasonable jurists could not differ as to the proper decision." Reston Hosp. Ctr., LLC v. Remley, 63 Va. App. 755, 764 (2014) (internal quotation marks omitted) (quoting Brandau v. Brandau, 52 Va. App. 632, 641 (2008)). Thus, although a court "definition[ally] abuses its discretion when it makes an error of law[,]" Robbins v. Robbins, 48 Va. App. 466, 475 (2006) (quoting Congdon v. Congdon, 40 Va. App. 255, 262 (2003)), the abuse of discretion standard "necessarily implies that, for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts—yet still remain entirely reasonable[,]" Hamad v. Hamad, 61 Va. App. 593, 607 (2013). Our use of this deferential standard of review "rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." Id.

## II. Circuit Court's "Prospective Modification"

In addressing father's challenge to what he terms the circuit court's "prospective modification" of the custody arrangement, it is important to recognize what father does not challenge. He does not challenge the circuit court's decision to award 50-50 custody of the child on an alternating, weekly basis nor does he assert that the circuit court was without the authority to impose the current custodial arrangement—physical custody with mother during the school year with father having limited weekend visitation—from the outset. Rather, he challenges the circuit court's power to do both: order the 50-50 custody arrangement for a two-year period to terminate upon the child's entering first grade with mother becoming the primary custodian from that point forward. Thus, although he recognizes that the circuit court could have awarded primary custody to

- 11 -

mother in 2017, he argues that the circuit court could not, in its initial custody award, order a temporary, fixed period of 50-50 custody to be followed "automatically" by the current arrangement.

In support of his argument, father notes that we previously have held that "[a] custody determination must be based on the child's best interests under the circumstances prevailing at the time of the decision." Wilson v. Wilson, 12 Va. App. 1251, 1255 (1991). In Wilson, upon which father relies, the circuit court awarded Mrs. Wilson primary physical custody of the parties' then nine-year-old child and "authorized Mrs. Wilson's move with the son to Nashville, Tennessee[.]" Id. at 1254. However, the circuit court conditioned its award of primary custody to Mrs. Wilson on her remaining in Nashville, ordering "that should she move from that location, primary custody of the son would automatically transfer to Mr. Wilson." Id.

We reversed. Stressing the need for custody determinations to be made based on the circumstances as they exist at the time the decision is made, we held that the provision that granted custody to Mr. Wilson upon a move by Mrs. Wilson no matter the circumstances was an abuse of discretion, writing that

> a change of location may be a material change in circumstances, if the evidence at the time so indicates. However, a predetermined automatic reversal of primary custody, *based on an undetermined move in the future*, is clearly an abuse of discretion. A move from Nashville to another location at some time in the future may prove to be in the son's best interests. *However, this cannot be determined until the move is contemplated* and all the circumstances associated with it are known.

Id. at 1255-56 (emphasis added). In short, we held it was error for the circuit court to prospectively order a change in custody based upon the occurrence of an unknown event, which the parties were not then contemplating, that may or may not occur at some unknown time in the course of nearly a decade (the remaining period of the child's minority).

Father argues that <u>Wilson</u> provides the rule of decision, requiring that we reverse the circuit court's custody decision in this case. There are, however, significant differences between the situation in <u>Wilson</u> and the circumstances here.

Unlike the unknown speculative event in <u>Wilson</u>, the "future" event here was not unknown or merely conjectural; at the time of the circuit court's initial custody order in September 2017, it was all but certain that the child would enter first grade at some point in the relatively near future, likely in September 2019.[6] Both parents contemplated that this entry would occur, and, although they had not reached such an agreement in 2017, they had agreed by 2018 which elementary school the child would attend for first grade. Finally, there was little to no evidence to suggest that there would be any other significant changes in the time from the circuit court's order to the child starting first grade. Thus, unlike the situation in <u>Wilson</u>, the triggering event here was not a speculative, unknown event, beyond the contemplation of the parties, that may or may not happen sometime in the ensuing decade; it was a known, all but certain event, specifically contemplated by parties, that was reasonably certain to happen at a specific known time in the next two years. These are not distinctions without differences. Accordingly, <u>Wilson</u> does not dictate that we conclude that the circuit court erred.

Even though <u>Wilson</u> does not mandate reversal, we must address whether, under the specific facts and circumstances of the case, the custody arrangement crafted by the circuit court is permissible. For the following reasons, we conclude that it is.

---

[6] Although the child's entry into first grade in 2019 was all but assured, the circuit court made allowances for the unlikely event that the child did not enter first grade as planned. First, it established a review hearing to allow it to make certain that the child's educational progress was occurring in the normal course. Second, in its January 2019 order, the circuit court included a provision for what was to take place if the child did not begin first grade in September 2019 as anticipated.

As father stresses, "[a] custody determination must be based on the child's best interests under the circumstances prevailing at the time of the decision." Wilson, 12 Va. App. at 1255. This requirement, however, does not require a circuit court to ignore the future. Although it must view the future as it appears that it will be as of the date of the decision, it is permissible for a circuit court to take the future into account.

In fact, it would be error for the circuit court not to consider future events in crafting a custody decree. After all, the custody determination is to be made for the best interests of the child going forward, not merely the best interests of the child on the day of entry of the order. Accordingly, the statutory factors explicitly require the circuit court take the future into account. See, e.g., Code § 20-124.3(1) (requiring a court to consider "the age and physical and mental condition of the child, *giving due consideration to the child's changing developmental needs*" (emphasis added)); Code § 20-124.3(5) (requiring a court to consider "[t]he role that each parent has played *and will play in the future*, in the upbringing and care of the child" (emphasis added)).

Such future considerations are evident in custody orders entered daily throughout the Commonwealth. Orders routinely contain provisions dictating with whom a child will spend spring break, birthdays, and holidays for years into the future. Taking the future into account also influences more permanent custody arrangements. For example, a circuit court certainly can determine that a child's best interests would be best served by awarding custody to the parent who lives in a preferred school district.[7] In short, a circuit court does not necessarily abuse its discretion in basing its custody decision on future events so long as the future events are viewed as they appear at the time the decision is made.

---

[7] This example is offered for illustrative purposes only. We recognize that the parents in this case reside in the same school district.

To his credit, father recognizes that there necessarily will be a future component in any custody order. He acknowledged at oral argument that the circuit court did not have to wait until the child began first grade to enter an order such as this one in this case, conceding that the circuit court permissibly could have ordered this arrangement based on evidence taken thirty days before the child entered first grade.[8] He argues that the larger time gap here renders the circuit court's decision an abuse of discretion.

We disagree that the two-year gap here constitutes an abuse of discretion.[9] The circuit court heard extensive evidence regarding the development and intellectual abilities of the child. It was clear from the evidence that the child was virtually certain to begin first grade in 2019, meaning the precise time of the change was known. Furthermore, there was more than sufficient evidence from

---

[8] Given father's contention that a two-year gap was too long and his concession that a thirty-day gap would have been permissible, we asked father at oral argument where he would have us draw the line between the two. In short, how far in advance is too far? He demurred, stating that he could not specify a precise point where such a time gap became impermissible. We note this not to criticize father. As discussed below, the inability to draw such a bright line rule stems from the best interests of the child standard and the need to craft custody arrangements to serve the interests of an individual child.

[9] We refer to the time period as a two-year gap because the order effectuating the custody arrangement was entered in September 2017 and the child entered first grade in September 2019, slightly less than two years later. The parties, however, characterize the gap differently. Mother argues that, given the multiple review hearings and the fact that the circuit court's last order on the subject was entered in January 2019, the gap was less than nine months. This ignores that, once the September 2017 order was entered, the parties were no longer at equipoise, with father needing to show a material change in circumstances to effectuate a change in the arrangement set forth in the September 2017 order. See generally Keel v. Keel, 225 Va. 606 (1983). Mother conceded at oral argument in this Court that this placed father at a disadvantage in the review hearings. Thus, the September 2017 order is the critical order for determining the circuit court's ability to order this arrangement making the two-year gap the relevant time period.
Father argues that the relevant gap is larger than two years because the circuit court orally issued its order from the bench in July 2017, two months prior to the entry of the order, and based its decision on evidence taken before that point. Given "that a circuit court speaks only through its written orders[,]" Berean Law Grp., P.C. v. Cox, 259 Va. 622, 626 (2000), and the fact that the order memorializing the ruling was entered relatively close in time to the announcement of the ruling from the bench, we believe the time gap is appropriately viewed as a two-year gap.

- 15 -

which the circuit court could conclude that the transition between custodians had a negative impact on the child. Based on the degree of acrimony between the parents and the length of time that it had existed, it was reasonable for the circuit court to conclude that the difficulties in transition and the negative effects they had on the child would continue indefinitely and certainly would exist in two years when the child began first grade.[10] It also was reasonable for the circuit court to conclude that the negative impact of these difficult transitions would be magnified once the child began dealing with more significant academic demands, meaning that the negative effects of a 50-50 custody arrangement during the academic year were also known. Thus, the circuit court, viewing the evidence as it existed at the time, could reasonably conclude that the child's best interests would be served by having a primary custodian once she entered first grade.

Rather than simply order that such an arrangement begin in 2017, the circuit court also concluded that the child's best interests would be served by spending more time with her father in her formative years than the existing *pendente lite* order allowed. Accordingly, the circuit court carefully crafted a hybrid, compromise solution that greatly increased father's time with the child, until such time that, in the view of the circuit court, those benefits would be outweighed by the negative effects associated with weekly transitions between custodians during the school year would have on the child's academic development.[11] From the record, it is clear that the circuit

---

[10] Although the circuit court was required to base its decision on the state of the evidence at the time of its ruling, we note that the subsequent conduct of the parents demonstrates that the circuit court was prescient in this regard.

[11] In his arguments, father assumes that, if the circuit court had been denied the ability to order the hybrid arrangement, it necessarily would have ordered the 50-50 custody arrangement. From the record, it is not clear that, if confined to an either/or choice, the circuit court would have selected the 50-50 custody arrangement. Thus, it was possible that the circuit court may have elected to impose the current custodial arrangement, physical custody with mother during the school year with father having limited weekend visitation, from the outset. Although father argues that allowing such a hybrid arrangement diminishes the time he has custody of the child, it may be the case that the hybrid arrangement actually increased his custodial time with the child over what it otherwise would have been.

court, using the best interests of the child as its guiding principle, considered all of the facts and circumstances and rendered a conscientious decision. Although we may have reached a different result in the first instance, we cannot say, based on the record before us, that the circuit court abused its discretion in concluding as it did.

Although we find the circuit court did not abuse its discretion under the specific facts and circumstances in this case, our opinion should not be taken as a wholesale endorsement of "automatic" changes in custody arrangements based on the occurrence of a future event. Even in somewhat similar circumstances, differences in the likelihood of the future event occurring, the degree of certainty as to when the event will occur, the degree to which the parties contemplated the event, and the time between the initial custody hearing/order and the potential occurrence of the event, combined with other facts and circumstances, may still render such orders an abuse of a circuit court's discretion. See Wilson, 12 Va. App. at 1256.

Unfortunately, it is impossible to state a general rule applicable to all cases that specifies how far in the future is too far, how uncertain a future event is to occur is too uncertain, or how little contemplation of the future event by the parties is too little before a circuit court's decision becomes an abuse of discretion. This is because child custody decisions are not decided on the basis of bright line *rules*; rather, they are decided by applying the best interests of the child *standard* to the specific facts in individual cases. By its very nature, such a legal standard is not amenable to the creation of hard and fast rules, but rather, confers discretion upon the decision maker.[12] Because the best interests of the child standard is intended to and does grant the

---

[12] The subject of the relative costs and benefits of adopting as a rule of decision bright line rules or more malleable standards has been the subject of much discussion in the legal literature, with one academic describing the distinction between the two as follows:

> What separates rules from standards? The distinction depends in large part on specificity. The paradigmatic "rule" falls toward the high end of the specificity spectrum; it ascribes definitive

- 17 -

decision maker considerable latitude so that the best possible result for a specific child can be achieved, it is difficult and sometimes impossible to know whether a particular decision constitutes an abuse of discretion without the benefit of knowing all of the facts and circumstances that informed the decision.

III. Circuit Court's Findings and Consideration of Statutory Factors

Father also contends that the circuit court's custody ruling constituted an abuse of discretion and a "clear error of judgment" because "the court's ruling . . . was not a conclusion that followed reasonably from the court's findings under the [statutory] factors[.]" In short, father argues that, assuming the circuit court had the power to make the custody decision it did, the statutory factors and the circuit court's determination of the facts should have led to a different outcome.

As noted above, circuit courts are granted "broad discretion" in making custody determinations. Brown v. Brown, 30 Va. App. 532, 538 (1999). Although a circuit court must consider the statutory factors found in Code § 20-124.3, it determines how to weigh those factors and "is not 'required to quantify or elaborate exactly what weight or consideration it has given to each[.]'" Id. (internal quotation marks and citations omitted). On appeal, we do not reweigh the factors to see if we would have reached a different conclusion; rather, so "long as evidence in the

---

consequences to the satisfaction of precise and determinate criteria. "Must be at least five feet tall to ride," for instance, leaves little room for interpretation: if you are at least five feet tall, you can go on the ride; if you are shorter than five feet, there is no use waiting in line. The paradigmatic "standard," by contrast, leaves many application-related details unresolved. "Must be mature enough to ride," for instance, offers only a hazy definition of eligible riders. What does the sign mean by "mature"? Who counts as "mature enough"? Many would-be riders cannot know in advance whether they will get to ride. They must await a final decision maker's judgment to find out whether they may step aboard.

Michael Coenen, Rules Against Rulification, 124 Yale L.J. 644, 652 (2014) (footnotes omitted).

record supports" the circuit court's determination and it "has not abused its discretion, its ruling must be affirmed on appeal." Id.

Father concedes that the circuit "court addressed the factors under Virginia Code § 20-124.3" in determining the custody arrangement. On brief, father reviews the findings the circuit court made regarding the statutory factors and argues that, weighed differently, they support a different result. Although the record reasonably can be read in the manner suggested by father, it is not how the circuit court balanced the factors. Because evidence supported the circuit court's factual findings that underlie the circuit court's weighing of the factors and there is nothing inherently unreasonable in its weighing of those factors, "its ruling must be affirmed on appeal." Id.

In addition to his argument that the circuit court should have reached a different result by weighing the factors differently, father argues that the circuit court abused its discretion regarding the factors by basing its conclusion on a "belief" as opposed to evidence. We disagree.

Central to father's argument is the circuit court's statement at the initial custody hearing that its decision was made "in light of the [c]ourt's belief of what is in the best interest of the child . . . ." According to father, this statement is "striking" because it reveals that the circuit court's "ruling was based on [its] *belief* of what is in the child's best interest, not on the evidence that had persuaded the court of that result."

Such a characterization of the circuit court's statement is only possible if the statement is ripped from its context. The statement was made after multiple hearings related to the custody issue during which the circuit court heard from at least ten witnesses. It was made immediately after the circuit court had informed the parties of its review of the statutory factors found in Code § 20-124.3, including references to pieces of evidence that caused the circuit court to make specific findings. Viewed in the proper context, it is clear that the "belief" referenced by the

circuit court was a belief the circuit court formed after extensive thought and a thorough review of the evidence presented. Thus, the statement in context demonstrates the fidelity of the circuit court to the serious task before it: determining what custody arrangement would serve the best interests of the child.[13]

To further his argument, father points to a statement the circuit court made as a result of the review hearing in July 2018. At that hearing, father requested that the circuit court leave in place the 50-50 custody arrangement then in place and not allow the previously ordered change to occur when the child entered first grade. In its written ruling denying that relief, the circuit court explained why it would not change its previous custody decision; the court was

> well aware of the typical increased demands on a young child entering elementary school. The parties did not offer evidence that [the child]'s full-time school will be anything but typical. It will be in [the child]'s best interest to be in [m]other's home during the school week, instead of the week-on and week-off . . . schedule.

Father argues that this demonstrates an abuse of discretion because the circuit court relied not on evidence, but rather, its own awareness of the "typical increased demands" associated with a child beginning elementary school.

It is, of course, true that a factfinder must base its decision on evidence presented rather than mere surmise or conjecture. However, it is equally true that factfinders, whether jurors or trial judges, do not abandon their common sense or experience in performing their function. Cf. Schneider v. Commonwealth, 230 Va. 379, 383 (1985) (explaining that a trial judge as factfinder is entitled to use "common sense" in evaluating testimony); Morton v. Commonwealth, 13

---

[13] If anything, the circuit court's use of the word "belief" demonstrates welcome humility. Faced with what charitably could be described as the parents' acrimonious relationship, the circuit court was attempting to pick the best custody arrangement for the child from less than optimal options. No judge, trial or appellate, faced with such a situation can know with certainty that he or she successfully has landed on the best custody arrangement for the child. The most that can be hoped for is a reasonable belief, based on the evidence, that he or she has done so.

Va. App. 6, 11 (1991) (recognizing that "[t]o measure the likelihood of occurrence of an inferred fact, a court may rely on common experience or the evidence in the case" (internal quotation marks and citation omitted)); Va. Model Jury Instrs.—Civ. No. 2.000 (jurors may use "common sense in considering the evidence"). As a result, factfinders may draw inferences from the evidence so long as those inferences do not "defy logic and common sense." Fox Rest Assocs., L.P. v. Little, 282 Va. 277, 283 (2011) (quoting TB Venture, LLC v. Arlington Cty., 280 Va. 558, 563 (2010)).

The circuit court's conclusion that first grade would be more demanding for the child than pre-school or kindergarten is such a reasonable inference. Absent any evidence that even suggested the contrary, a rational factfinder could reach such a conclusion. There is simply nothing unreasonable in concluding that first grade was likely to be more demanding than kindergarten. Accordingly, the circuit court drew a reasonable inference from the evidence and did not abuse its discretion in doing so.[14]

CONCLUSION

Resolving custody disputes between fit parents is a difficult task. The degree of difficulty increases exponentially when, as here, both parents clearly love the child, but appear incapable of working together for the benefit of the child. Because the child is the unintended victim in such scenarios, circuit courts are charged with protecting the child's best interests and are granted significant discretion and latitude to craft custody arrangements to ensure as much as possible that the child's interests are, in fact, served and protected.

---

[14] This is not to say that another factfinder, considering the same evidence, necessarily would have concluded that first grade was more demanding on the child than what came before it or that any new demands from first grade would result in the child's best interests being served from having the same custodian during the school week. Rather, it simply is a recognition that the circuit court's conclusions in this regard fit within the "bell-shaped curve of reasonability[,]" Hamad, 61 Va. App. at 607, that entitle them to deference on appeal.

Here, the circuit court conducted numerous hearings over a lengthy period, repeatedly giving the parties more time than had been scheduled, to establish the relevant facts and circumstances that existed at the time of its decision. Based on those facts and circumstances and the reasonable inferences it drew from them, the circuit court reasonably determined that the hybrid custody arrangement it crafted served the child's best interests. Based on the record before us, we cannot say that no reasonable jurist could have reached this conclusion. Accordingly, the circuit court did not abuse its discretion, and its judgment is affirmed.

Affirmed.